UNITED STATES of America

v.

**Guy Earl BUCKALEW, Defendant.**

**Crim. No. 87–00037–P.**

United States District Court,
D. Maine.

Dec. 18, 1987.

F. Mark Terison, Asst. U.S. Atty., Portland, for plaintiff.

Richard S. Emerson, Portland, for defendant.

## OPINION AND ORDER

GENE CARTER, District Judge.

The Defendant is charged with the crime of solicitation to commit armed bank robbery, in violation of 18 U.S.C. § 373. A bench trial was held on November 23, 1987. The Government introduced in evidence several tapes of recorded conversations, with accompanying transcripts, and oral testimony was presented by both sides. Having had the opportunity to listen to the recorded conversations, and having given careful consideration to all the evidence presented at trial, the Court enters judgment. For the reasons to be set forth more fully below, the Court finds the Defendant guilty as charged.

### I.

All the relevant events took place in a one week period from April 22 through April 29, 1987. The Government relies primarily on the testimony of, and taped conversations elicited through, its key witness James Stewart. Buckalew first became acquainted with Stewart at a half-way house for recovering alcoholics in Lewiston, Maine. At the time these events took place, however, Buckalew was staying in a motel and Stewart lived at home with his wife and two children in Lewiston.

On April 22, 1987, Stewart met Buckalew on the street and a discussion ensued that eventually led to the topic of making some "fast cash." They met several more times that day, at which times Buckalew further elaborated on his scheme to rob a bank. The final meeting took place in Stewart's home that night. Both sides acknowledge that Buckalew had been drinking heavily.[1] Stewart claims that Buckalew threatened him, his wife, and his children after Stewart said he didn't want to get involved. Buckalew denies ever making such threats, and the only corroborative testimony for such threats was presented by Stewart's wife who testified that while standing in another room, she thought she overheard Buckalew say "I'll take the baby."

The next meeting took place on the following day, April 23, in Buckalew's car while parked in a lot adjoining Stewart's house. Another man, one Ralph Mosher, was seated in the back seat during Stewart's and Buckalew's conversation in the front seat. Stewart testified that Buckalew threatened him during this conversation as well, saying that Mosher would kill him if he didn't go through with it. Again, there is little corroborative testimony for the making of such threats, but Mosher's conversation with Stewart on April 29, as well as his testimony at trial, confirm at least that he was present on the occasion. Mosher testified that he was there to give Buckalew a second opinion on whether Stewart could be trusted.

On the night of April 23, Stewart called the attorney who was representing him in a state criminal case for armed robbery. Stewart was awaiting sentencing at the time.[2] He told his attorney about the sev-

---

**1.** In fact, Buckalew contends that he was on "a drunk" during the whole time period in question and that, although he talked about a bank robbery, he wasn't serious.

**2.** The defense contends that Stewart's testimony should be discounted because he had a motive to cooperate with the Government in order to gain leniency in his state sentencing hearing. The Government, however, was not in a position to make any recommendations in the state court proceeding, and the FBI agent testified that he never made any promises to Buckalew

in exchange for his cooperation. Although Stewart's lawyer made some oral representations to the state court at the sentencing proceeding, the federal government did not speak. The Court does not view Stewart's cooperation as a righteous act with pure motive; nevertheless, his testimony does not lose all credibility merely because he entertained, at one time, the hope that such cooperation would redound to his benefit with respect to the state court sentencing. The Court finds that he had not been given by the federal authorities nor any other officials any reasonable grounds for such a

eral conversations with Buckalew and asked what he should do. His attorney called the FBI, the FBI contacted him that night, and he met with an agent the following day.

Stewart met again with Buckalew on the following morning, April 24, and they were observed by an FBI surveillance team as they went together to "case" the Key Bank at the Promenade Mall. They sat in the car for a period of time and then entered the Bank. They were later observed driving to a costume shop. That afternoon, Stewart met with FBI agents and agreed to stay away from Buckalew over the weekend (April 25 and 26) so that further conversations could be taped on the following Monday.

Stewart did not stay away from Buckalew and apparently shadowed him for a period of time that Saturday, April 25. He left a note on Buckalew's car on Saturday while Buckalew slept at a nearby rest area, reminding him of their meeting the following Monday. There was also testimony suggesting that Stewart may have led Buckalew home from the rest area that night after Buckalew had passed out from drinking, but the witness, Robert Vale, was uncertain as to the exact date of the event to which he testified.

On Monday, April 27, Stewart met with Buckalew again and drove to the Key Bank. The FBI observed this meeting and recorded parts of their conversation. Details of the robbery were discussed, including the method of disguise (stockings), use of a weapon (pistol), detaining the bank clerks while leaving (wedging them in a room), and the need to obtain a car for the getaway.

Several other meetings occurred between Stewart and Buckalew, but the only other taped conversation was between Stewart and Mosher at the latter's house on Wednesday, April 29. Although Mosher effectively disassociates himself from the robbery scheme at that time, his conversation reaffirms several details of the prior meeting between the three on April 23. In addition, Mosher tells Stewart why Buckalew probably sought him out ("Jim, you must know yourself, its almost impossible to find a guy thats solid, that's got the [expletive] cool for something like we're talking about ... you're up for [expletive] robbery now ... and you talk pretty level headed."), and that Buckalew could be trusted ("I would trust him as being a straight shooter ... to do his part of the job.").

## II.

■ Under the solicitation statute, 18 U.S.C. § 373 (Supp. III 1985),[3] the Government must prove two essential elements. First, it must be shown that the defendant had the *intent* that another person engage in conduct constituting a crime described in Title 18. That intent must be shown to be serious by strongly corroborative circumstances. *United States v. Gabriel*, 810 F.2d 627, 635 (7th Cir.1987). Second, the Government must prove that the defendant commanded, induced, or otherwise endeavored to persuade the other person to commit the felony. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 308, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3488. Each of these elements will be addressed in turn.

■ As to the first element, the Government presented numerous circumstances

hope. Testimony at trial indicated that, in fact, he received no leniency in the state court because of his cooperation in this matter.

3. Section 373 provides in pertinent part:
(a) Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against the person or property of another in violation of the laws of the United States, and *under circumstances strongly corroborative of that in-*

*tent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct,* shall be imprisoned not more than one-half the maximum term of imprisonment or fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by death, shall be imprisoned for not more than twenty years.
18 U.S.C. § 373 (emphasis added).

strongly corroborative of Buckalew's serious intention that Stewart carry out the crime of armed bank robbery, a felony having as an element the use of physical force. *See* 18 U.S.C. § 2113(a) and (d). In the Senate Report accompanying the legislation of which the solicitation statute was a part, S.Rep. No. 307, 97th Cong., 1st Sess. 183 (1982),[4] several examples of "strongly corroborative circumstances" were offered as highly probative of serious intent: (1) the fact that the defendant offered or promised payment to the person solicited; (2) the fact that the defendant threatened harm to the person solicited if he wouldn't commit the felony; (3) the fact of repeated solicitations or an extended attempt to solicit; (4) the fact that defendant believed or knew that the person solicited had been involved with similar offenses; and (5) the fact that defendant made preparations for the commission of the offense, including the acquisition of weapons. Many of these circumstances were evident in the present case.

First, testimony indicated that Buckalew knew that Stewart had been involved with armed robbery in the past. He knew, at the very least, that Stewart was then awaiting sentencing for such a felony. Second, Buckalew drove Stewart to the Key Bank at the Promenade Mall on two occasions to discuss strategy and familiarize him with the layout. That fact alone evidences significant preparation for the commission of the offense. In addition, although it appears from the evidence that Buckalew never acquires a gun or a car for the robbery, he discusses at various points on the April 27 tape the need for both. During the course of one discussion he states:

> The main thing is just getting the car to do it with. You can have that little pistol

to hold on to, to put a little fright in 'em, and that's all you gotta do. * * * I don't care who does it [bag the money]. Somebody's just got to hold the gun and watch them gals, while the other gets the money.

Third, discussion and preparation for the robbery took place at various times over the week-long period, which contradicts the defense's contention that Buckalew was just drunk and carrying on about robbing a bank as he had frequently done in the past—jokingly. Here, however, words were followed by action. This was a definite scheme, however ill-conceived, and Buckalew seriously intended that Stewart serve as an accomplice in carrying it out.

The Court need not find that Buckalew threatened Stewart at his home on April 22 and again in the car on April 23 with Mosher, in order to find sufficient evidence of serious intent. The Court views with suspicion Stewart's largely uncorroborated testimony that threats were made after he tried to disassociate himself from the plan. It is a more likely scenario, based on the facts on the record, that Stewart was at all times interested in the plan and that Buckalew may have made some threatening remarks to insure that he wasn't a "rat". There is nothing in any of the taped conversations to suggest that Stewart was ever an unwilling participant, despite Stewart's continual attempts to bring out such evidence by manipulating conversations with Buckalew and Mosher.[5] Testimony by Stewart's wife that she heard "bits and snatches" of the April 22 conversation between Buckalew and Stewart, and that Buckalew uttered something like "I'll take the baby", did not add significant credibility to Stewart's version of the threats.

The second element of the federal crime of solicitation requires the Government to

---

**4.** The Senate Judiciary Committee adopted the discussion of the elements of solicitation found in this report on S. 1630, in its later report accompanying section 373. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 308 & n. 4, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3487–88 & n. 4.

**5.** In fact, in his taped conversation with Mosher on April 29, Mosher acts surprised when Stew-

art begins questioning him about how long he's known Buckalew: "What do you hav [sic], having second thoughts?" Later, Mosher recounts what Buckalew had told him about Stewart: "He said that you was already for this yourself. I said well does this guy really want the part, part I says, how do you feel about (unintelligible) ... He [Buckalew] said he's ready to go."

prove that the defendant engaged in conduct "characterizable as commanding, entreating, inducing, or endeavoring to persuade." S.Rep. No. 307, 97th Cong., 1st Sess. 183 (1982). It is clear from the taped conversations, as well as from testimony elicited at trial, that Buckalew initiated the scheme to rob the Key Bank. Although Stewart may have been a willing listener, Buckalew was the instigator and persuader. Buckalew states in conversation with Stewart on April 27 that he'd been looking at the Key Bank at the Promenade Mall for two months. He discusses the need for a pistol and a getaway vehicle and assures Stewart that

> [a]s far as getting by with it, there's nothing easier to do than a bank. But then you may have a problem with flat ass getting away from it.

Although there was little testimony to indicate that Stewart had been promised (as inducement) a sum certain by Buckalew, the inducement for the crime of bank robbery is, to some extent, inherent in the crime itself: robbing a bank necessarily implies the payment of some "cut" from the proceeds. In this case, it was largely assumed that Stewart would get a cut from the proceeds of the robbery: in their conversation outside the Key Bank on April 27, Stewart asks Buckalew whether they would go to Stewart's home or Buckalew's motel after the robbery, and Buckalew answers, "Either one, just to split it up, yea."

In sum, Buckalew's behavior is characterizable as "inducing or endeavoring to persuade" Stewart to participate in the armed robbery of the Key Bank, and the surrounding circumstances strongly corroborate the fact that he seriously intended Stewart to join with him. Both these elements of the crime of solicitation, 18 U.S.C. § 373, have been proven beyond a reasonable doubt. Judgment will be, and hereby is, entered accordingly.