**UNITED STATES of America, Plaintiff,**

v.

**Etta May HOLVECK, and Ronald Joe Frazier, Defendants.**

**No. 94–40037–01/02–SAC.**

United States District Court, D. Kansas.

Oct. 24, 1994.

---

Marilyn M. Trubey, David J. Phillips, Office of Federal Public Defender, Kansas City, KS, for Etta May Holveck.

Joseph D. Johnson, Joseph D. Johnson, Chtd., Topeka, KS, for Ronald Joe Frazier.

James E. Flory, Office of U.S. Atty., Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

The defendants are charged with one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 with reference to 18 U.S.C. § 1958 and one count of soliciting another to commit a felony having as an element physical force in violation of 18 U.S.C. § 373 with reference to 18 U.S.C. § 1958. The defendant Ronald Joe Frazier has filed the following pretrial motions: motion to join co-defendant's motions (Dk. 33); motion for discovery (Dk. 36); and motion to dismiss indictment for outrageous government conduct (Dk. 37). The defendant Etta May Holveck has filed the following motions: motion to dismiss count two on the ground of multiplicity (Dk. 39); motion for 404(b) disclosure (Dk. 40); motion to compel discovery concerning informant (Dk. 41); motion to join motions of co-defendant (Dk. 42) and motion to dismiss indictment for lack of federal jurisdiction (Dk. 43). Having heard oral argument on October 21, 1994, the court is ready to decide the defendants' pretrial motions.

### Motions to Join Co-defendant's motions (Dks. 33 and 42)

■ It is the court's practice to grant such motions on the following conditions. *See, e.g., United States v. Ridley*, 814 F.Supp. 992, 995 (D.Kan.1993). Unless argued in the motion to join, the joining defendant will not be allowed to raise any new, additional or different arguments other than those found

in the moving defendant's motion and memorandum. "In other words, any issues of prejudice, standing, fairness, need or other factors unique to the party seeking to join shall be made in the written motion to join or the court will consider them to have been waived." *Id.* The court grants both motions to join on these same conditions.

## Motion for Discovery (Dk. 36)

The defendant Frazier makes a broad request for all documents or other evidence of communications between the Marysville Police Department, the Marysville County Attorney's office, the Kansas Bureau of Investigation, any other state governmental agency, and any federal governmental agency. Frazier does not describe the substance or nature of the communications which he seeks. Frazier grounds his requests on Rule 16 of the Federal Rules of Criminal Procedure which means he seeks documents that are material to his preparation of a defense, that the government intends to use in its case in chief, or that were obtained from or belong to the defendant. The government opposes Frazier's motion arguing it violates this court's guideline I.B. and asks for documents that are not discoverable.

■ Frazier admits in his written motion that he made no informal request of the government for these documents. This is the second time that Frazier has filed a discovery motion without complying with this court's guidelines. The court summarily denied the first motion on September 20, 1994. Two weeks later, Frazier filed the instant discovery motion offering the imminent pretrial motion deadline as his excuse for not consulting the government first. Frazier's excuse is untenable. On September 6, 1994, the magistrate judge imposed the pretrial motion deadline of September 20, 1994. On

Frazier's motion, this court extended that deadline to October 4, 1994. Frazier has had a reasonable time to consult the government about this discovery request before filing his motion. Finally, the purpose of the court's guidelines is to limit discovery motions to those presenting a genuine dispute. That purpose is thwarted when a motion like Frazier's is filed. Frazier's motion violates guideline I.B. and is summarily denied on that ground.

## Motion to Dismiss for Outrageous Conduct (Dk. 37)

■ Frazier paints a picture of innocuous joking first misinterpreted by his nephew and then transformed into criminal conduct through the excessive involvement and zeal of the police. From his reading of the state trial transcript, Frazier extracts the following facts.[1] On September 8, 1994, he and Holveck were painting a house in Marysville, Kansas, and Frazier's nephew, Mike, was helping them. They were having a good time laughing and joking during this project. At some point, Holveck "jokingly" asked Mike if he would shoot out the tires of the car belonging to her former husband, James Prokop. Holveck apparently explained that she would benefit from Prokop's retirement plan if Prokop was retired, disabled or deceased. Their conversation about this subject lasted approximately ten minutes.[2]

At the end of the day, Mike had a few beers and went home to his wife, Brenda. Mike told Brenda about his day including Holveck's offer to shoot Prokop's car tires. Believing Holveck's offer was not a joke, Brenda called the police who asked that Mike contact them. After speaking with Mike, the police believed the situation was not a joke

---

[1]. Motions to dismiss for outrageous government conduct generally cannot be decided unless the parties stipulate to the facts or until the evidence at trial is closed. Frazier apparently believes his motion can be decided pretrial from the state trial transcript. Frazier, however, did not furnish the court with a copy of the state trial transcript with his motion. The government disputes the facts as presented by Frazier in his brief and at oral argument. In order to have some context for discussing the relevant law, the

court accepts the facts as Frazier has represented them in his written memorandum.

[2]. At the hearing, Frazier's counsel offered a different impression of this conversation. He argued the only thing said was defendant Holveck's general comment that she wished "someone" would shoot out the tires on Prokop's car. He saw this comment as expressing only an intent to cause property damage.

and requested the Kansas Bureau of Investigation's ("KBI's") involvement.

Special Agent Brandau met with Mike and created a cover in which Brandau and Mike would be former acquaintances and Mike would introduce Brandau as an available hit man. On the afternoon of September 9, 1994, Mike made a recorded call to Frazier's residence saying he was in Junction City visiting an old friend. Mike explained that his friend was willing to get rid of Holveck's former husband. Frazier discussed his understanding of Holveck's terms as $6,000 to the hit man after Prokop "kicks the bucket." Frazier told his nephew to call back in an hour as Holveck was taking a nap. Approximately an hour later, Mike called again and spoke to both Frazier and Holveck this time. It was agreed that Mike would bring Brandau to Frazier's residence within the next hour and a half.

When Brandau and Mike arrived, small talk was exchanged and Frazier admitted during the conversation that he was an alcoholic. Frazier was drinking when they arrived and continued drinking while they were present. At some point, Brandau said that he understood Holveck wanted Prokop killed, and Frazier agreed that was Holveck's wish. Holveck then provided some documents regarding the retirement plan and offered to pay Brandau $7,000 of the money she received from Prokop's retirement plan. Holveck asked Brandau how he would kill Prokop. Brandau proposed a staged burglary instead of shooting the tires on Prokop's car. Holveck then provided Brandau with Prokop's address in Nebraska and a map. After leaving, Brandau prepared search and arrest warrants which were later executed.

■ The concept of outrageous conduct was first recognized by dictum in *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973): "[W]e may some day be presented with a situation in which the conduct of law enforce-

ment agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Harris*, 997 F.2d 812, 815 (10th Cir.1993). Most circuits, including the Tenth, recognize outrageous government conduct as a viable defense. *United States v. Mosley*, 965 F.2d 906, 909 (10th Cir.1992). The burden is with the defendant to prove this defense. *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 347, 130 L.Ed.2d 303 (1994).

Neither the Supreme Court nor the Tenth Circuit have reversed a conviction on this defense with one possible exception. *United States v. Diggs*, 8 F.3d 1520, 1523 (10th Cir. 1993) (citing *Jacobson v. United States*, —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992) (reversed conviction when government did not dispute inducing the defendant and failed to adduce evidence supporting the jury's verdict that the defendant was predisposed)); *see United States v. Harris*, 997 F.2d at 816 (only two circuit court decisions and a handful of district court decisions have set aside convictions or dismissed charges because of outrageous government conduct). The outrageous government conduct defense "is an extraordinary defense reserved for only the most egregious circumstances. It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating. Nor is it intended merely as a device to circumvent the predisposition test in the entrapment defense." *United States v. Mosley*, 965 F.2d at 910; *see United States v. Clonts*, 966 F.2d 1366, 1369 (10th Cir.1992) (the defense "has been severely limited").[3]

■ To be so outrageous as to bar a prosecution, the government's conduct must offend "that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *Russell*, 411 U.S. at 432, 93 S.Ct. at 1643. As opposed to the defense of

---

3. In setting such a difficult standard for this defense, courts have accounted for the danger of giving courts the power to "veto" law enforcement practices. *Russell*, 411 U.S. at 435, 93 S.Ct. at 1644. In *Mosley*, the Tenth Circuit recognized that law enforcement is afforded ample

discretion in devising methods to fight crime and that one accepted method is for government agents to assume the role of criminals in infiltrating criminal enterprises and apprehending the criminals. 965 F.2d at 910.

entrapment that looks at the defendant's state of mind, the defense of outrageous conduct focuses on the government's actions with respect to the charged offense. *Diggs,* 8 F.3d at 1525. This defense is resolved only after an inquiry into the totality of the circumstances of the particular case. *Mosley,* 965 F.2d at 910. Though not exclusive, two factors commonly present when this defense has been successful are government creation of the crime and substantial coercion. 965 F.2d at 911.

## A. Creation of the Crime

■■■■ "Generally, the government may not manufacture a crime from whole cloth and then prosecute a defendant for becoming ensnared in the government's scheme." *Harris,* 997 F.2d at 816. The government is excessively involved when it " 'engineer[s] and direct[s] the criminal enterprise from start to finish.' " *Pedraza,* 27 F.3d at 1521 (quoting *Mosley,* 965 F.2d at 911). On the other hand, it is not outrageous when the government infiltrates an ongoing criminal scheme, induces a defendant to expand prior criminal activity, or provides supplies or expertise for illegal activity. *Mosley,* 965 F.2d at 911–12.

■■■ Frazier argues the government overreached in creating a crime from a mere joke. The court will assume for now that Holveck and Frazier were just joking when they first offered Mike $7,000 to shoot out Prokop's tires. Still, the criminal design of committing such a crime originated with the defendants; it was not implanted by the government. *See United States v. Pardue,* 983 F.2d 843, 847–48 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 728 (1993). The defendants had considered not only a possible means for committing the crime but the financial benefit to them. When the undercover agent working with the Frazier's nephew, Mike, approached the defendants, the government simply provided the defendants with the expertise to accomplish their criminal scheme. The defendants had three opportunities, the two phone calls and subsequent personal visit, to tell Mike and Brandau to forget it as they were only joking. Instead, the defendants agreed to meet with Mike and Brandau and then to hire Brandau to murder Prokop. Holveck set the terms of payment and asked Brandau to explain his plans for killing Prokop. Holveck aided Brandau by providing Prokop's address and a map. On these facts, the court cannot say that the government created or manufactured the crime.

## B. Coercion

■■■ This factor looks at the government's means and efforts at influencing or inducing the defendant to commit the crime. Examples of sufficient affirmative coercion are physical force, incarceration, and large financial inducements. *Mosley,* 965 F.2d at 912. "[C]oercion of any type must be particularly egregious before it will sustain an outrageous conduct defense." *Id.*

■■■ The two phone calls to the defendants and the conversations that transpired during them do not even approach coercive conduct. Neither Mike nor Brandau said or did anything that was intimidating, threatening, or coercive. Frazier argues the government knew of his drinking problem and exploited his intoxicated state. There is nothing to suggest that the government knowingly preyed upon Frazier's drinking problem or that Frazier's will was overborne by the government's efforts. Finally, the court finds nothing outrageous in the government agent acting as a friend of Frazier's nephew. " '[G]overnment agents may employ appropriate artifice and deception in their investigation.' " *Mosley,* 965 F.2d at 912 (quoting *United States v. Biswell,* 700 F.2d 1310, 1314 (10th Cir.1983)); *see United States v. Pardue,* 983 F.2d 835, 841–42 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 728 (1993). None of the acts as argued by the defendant Frazier constitute coercion sufficient to establish outrageous conduct.

## Motion to Dismiss Count Two As Multiplicitous (Dk. 39)

The defendant Holveck contends that the solicitation offense in count two charges the same criminal act as the conspiracy offense in count one and that the government would

prove every element to the solicitation charge upon proving the conspiracy charge. Indeed, Holveck considers the solicitation count to be nothing more than an overt act charged in the conspiracy count. The government disputes the similarity of elements and argues it must separately prove for the solicitation charge that the defendants solicited, commanded, induced or persuaded another person to engage in felony conduct.

 " 'Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior.' " *United States v. Fleming,* 19 F.3d 1325, 1330 (10th Cir.1994) (quoting *United States v. Dashney,* 937 F.2d 532, 540 n. 7 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991)), *cert. denied,* —— U.S. ——, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994). Though not a fatal error for an indictment, multiplicity presents the danger of multiple sentences for one offense and the improper impression to the jury that the defendant committed more than one crime. *United States v. Jackson,* 850 F.Supp. 1481, 1497 (D.Kan.1994). The test for deciding whether someone may be prosecuted simultaneously for violations of two different statutes involving the same conduct is not the same as the standard for deciding whether someone can be convicted and punished under the two different statutes. *Ball v. United States,* 470 U.S. 856, 859–61, 105 S.Ct. 1668, 1670–72, 84 L.Ed.2d 740 (1985); *United States v. Parra,* 2 F.3d 1058, 1071 (10th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993). As to the former standard, the issue is whether the statutory language and legislative history show the two statutes were intended to oper-

ate and to be applied independently. *Ball,* 470 U.S. at 860, 105 S.Ct. at 1671. As to the latter standard, the issue is whether Congress intended someone to be convicted and punished for two offenses for having committed the same conduct. *Ball,* 470 U.S. at 861, 105 S.Ct. at 1671.

 The defendant Holveck erroneously relies on the latter standard in arguing for the pretrial dismissal of count two. The court finds no basis for concluding that Congress intended an interdependent relationship between the conspiracy statute, 18 U.S.C. § 371, and the solicitation statute,[4] 18 U.S.C. § 373. Absent some evidence that the two statutes were not to be applied independently, the court is without cause to limit the government's broad discretion in selecting the charges on which a case is brought. *Ball,* 470 U.S. at 859–60, 105 S.Ct. at 1670–71.

 Since the issue has been raised, the court will decide on the facts as now argued whether the defendant may be convicted and sentenced for both conspiracy and solicitation on the same criminal behavior. This too involves a quest to determine congressional intent. Since neither the statues nor the legislative history disclose congressional intent, the court must resort to the "rule of statutory construction" found in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See United States v. Morehead,* 959 F.2d 1489, 1506 (10th Cir. 1992). The Supreme Court enunciated the rule as follows:

> [W]here the same act or transaction constitutes a violation of the two distinct statuto-

---

4. Section 373 was enacted as part of the Comprehensive Crime Control Act of 1984. It proscribes the offense of solicitation to commit a federal crime of violence. The legislative history to § 373 does not show that Congress intended it to be charged only when a conspiracy is not charged. "[A] person who makes a serious effort to induce another person to commit a crime of violence is a clearly dangerous person and ... his act deserves criminal sanctions whether or not the crime of violence is actually committed. The principal purpose of the new section is to allow law enforcement officials to intervene at an early stage where there has been a clear demonstration of an individual's criminal intent and danger to society." S.Rep. No. 98–225, 98th

Cong., 2d Sess. 308 (1984), *reprinted in,* 1984 U.S.C.C.A.N. 3182, 3487. Indeed, Congress may have intended for the solicitation statute to bring within its scope some of the conduct already proscribed by the conspiracy statute. *United States v. Buckalew,* 859 F.2d 1052, 1054 (1st Cir.1988) (quoted Senate Report No. 97–307, 97th Cong., 1st Sess. 179 as saying "that the 'principal reason' for the statute is 'to cover the situation where a person makes a serious effort to induce another to engage in conduct constituting a crime but is unsuccessful in doing so' and that 'if the solicitee agrees to engage in criminal conduct and an overt act is performed to effect an objective of the agreement, the solicitor would be guilty of conspiracy.' ").

ry provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger,* 284 U.S. at 304, 52 S.Ct. at 184. In short, the same criminal act may constitute separate offenses if each requires proof of some fact not required in proving the other.

■■■ The charging language in counts one and two reveal they are based on the same conduct: the defendants' arrangement to murder James Prokop. Count one charges the defendants with conspiring to violate 18 U.S.C. § 1958, using interstate commerce facilities in the commission of murder-for-hire. There are five elements which must be established for a conspiracy conviction under 18 U.S.C. § 371: (1) an agreement, (2) to break the law, (3) an overt act, (4) to further the conspiracy, and (5) willful participation in the conspiracy by the defendant. *United States v. Nall,* 949 F.2d 301, 305 (10th Cir.1991); *see United States v. Pardue,* 983 F.2d at 842. The essence of a conspiracy charge is the agreement to commit a crime. *United States v. Johnson,* 977 F.2d 1360, 1371 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993).

■■■ Count two charges the defendants with soliciting Brandau to commit a murder in violation of 18 U.S.C. § 1958. To obtain a solicitation conviction under 18 U.S.C. § 373, the government must prove two elements: (1) that the defendant intended, as evidenced by strongly corroborative circumstances, for Brandau to commit a murder in violation of 18 U.S.C. § 1958; and (2) that the defendant solicited, or otherwise tried to persuade Brandau to commit the murder. *United States v. Razo–Leora,* 961 F.2d 1140, 1147 n. 6 (5th Cir.1992); *United States v. McNeill,* 887 F.2d 448, 450 (3rd Cir.1989), *cert. denied,* 493 U.S. 1087, 110 S.Ct. 1152, 107 L.Ed.2d 1055 (1990); *United States v. Buckalew,* 859 F.2d 1052, 1053 (1st Cir.1988). The essence of a solicitation offense is the serious effort to induce another to commit a Title 18 offense. *Buckalew,* 859 F.2d at 1054.

■■■ A simple contrast of the essential elements to a § 371 conspiracy and a § 373 solicitation reveals that each requires the proof of a different fact. For the defendants here to be found guilty of conspiracy, the government need not prove that they induced or tried to persuade Brandau to murder Prokop. For the defendants to be found guilty of solicitation, the government need not prove an agreement or conspiracy between the defendants to violate 18 U.S.C. § 1958. Though the issue of multiplicity on § 371 and § 373 charges appears to be one of first impression, other courts have upheld convictions under both statutes for the same criminal activity, and their analysis illustrates the differences between the statutes. *See, e.g., United States v. Razo–Leora,* 961 F.2d at 1144, 1147; *United States v. Gabriel,* 810 F.2d 627, 633–36 (7th Cir.1987); *cf. United States v. Dolt,* 27 F.3d 235, 238–39 (6th Cir.1994). The court finds that count two is not multiplicitous of count one.

## Motion for 404(b) Disclosure

The government responds that it presently knows of no evidence coming within its disclosure obligation under Rule 404(b) of the Federal Rules of Evidence. Anticipating that the government has conducted a diligent inquiry prior to filing its response, the court finds the government's response sufficient.

## Motion to Compel Discovery Concerning Informant (Dk. 42)

The defendant Holveck files a stock motion for informant information regarding Mike Frazier. She seeks disclosure of certain matters with which to impeach Mike Frazier, the government's assurance that it will make reasonable efforts to produce him as a witness at trial, recorded communications between Mike Frazier and government agents, a transcript of his grand jury testimony, an opportunity to interview Mike Frazier, and disclosure of any other informants. The defendant Holveck couches her request on case law regarding confidential informants.

■■■ Because the defendant presumably knows who the informant is, where the informant lives and what he has testified to

in the state trial, the court considers the case law cited by the defendant inappropriate in deciding her motion. It is true that Mike Frazier assisted in arranging the commission of the offenses and was present when the defendants allegedly committed them. Still, there is nothing to suggest that Mike Frazier is unavailable to the defendants' counsel or that their investigation of him is impeded by any efforts to keep his identity or location confidential.[5] The court has no basis for imposing those discovery obligations[6] reserved for confidential informants. As with any witness, the government, however, has the discovery obligations otherwise imposed by *Brady, Giglio,* Rule 16 of the Federal Rules of Criminal Procedure, and the Jencks Act, 18 U.S.C. § 3500. The court expects the government understands its duties and will meet them. The court denies the defendant's motion for failure to comply with the court's guideline I.B.

## Motion to Dismiss for Lack of Federal Jurisdiction (Dk. 43)

The defendant Holveck argues that interstate or foreign commerce is a jurisdictional prerequisite to a violation of 18 U.S.C. § 1958 and that the government has not shown the factual basis for federal jurisdiction. The defendant does not specifically challenge the sufficiency of the indictment. The government argues that the indictment adequately alleges a federal nexus and that there are no extraordinary circumstances justifying a pretrial factual review.

■■■ At this stage, an indictment is judged solely for the sufficiency of its charges without regard to the strengths and weaknesses of the government's case. *United States v. Quintanilla,* 760 F.Supp. 687,

690 (N.D.Ill.1991), *aff'd,* 2 F.3d 1469 (7th Cir.1993); *see United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 174–75, 9 L.Ed.2d 136 (1962). A court is not to look behind the indictment to see if it is supported by substantial evidence. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir.1994) (citing *United States v. Sampson,* 371 U.S. at 78–79, 83 S.Ct. at 175). An exception exists in this circuit when the operative facts are undisputed, an evidentiary hearing is conducted, and the government does not object to the trial court's consideration of evidence. *Hall,* 20 F.3d at 1087–88. The exception is inapplicable here, for the government asks the court to look only at the indictment and opposes an evidentiary review.

■■■ On the face of the indictment, the jurisdictional basis for each count has been adequately charged. " 'An indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.' " *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.) (quoting *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50, 96 S.Ct. 55 (1975)) *cert. denied,* —— U.S. ——, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992). In count one, the indictment alleges that the defendants agreed to cause another to commit an offense against the United States involving interstate travel. Count two charges the defendants solicited or tried to persuade Brandau to travel interstate and commit murder. The truth of

---

**5.** "A defendant who knows the informer must show that he made a diligent attempt to locate him before relief will be ordered under *Roviaro* [*v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639] [(1957)]." *United States v. Turbide,* 558 F.2d 1053, 1060 n. 6 (2nd Cir.), *cert. denied,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *see United States v. Ridley,* 814 F.Supp. 992, 997 n. 3 (D.Kan.1993); *cf. United States v. Reardon,* 787 F.2d 512, 516–17 (10th Cir.1986) (no error in denying defendant's request for information on informant who he knew was his niece's boyfriend).

**6.** When the court orders disclosure pursuant to *Roviaro,* it may require the government to exercise reasonable diligence in locating the informant and producing him at trial. *See, e.g., United States v. Suarez,* 939 F.2d 929, 932 (11th Cir.1991). Informants, however, "cannot be compelled to a pretrial interview with defense counsel." *United States v. Nixon,* 777 F.2d 958, 967 n. 12 (5th Cir.1985).

those allegations is a matter reserved for trial. The government has alleged a valid basis for federal jurisdiction against the defendants.[7]

The facts as alleged in the indictment do not bear the slightest resemblance to the facts in cases where the government agents have manufactured federal jurisdiction. In *United States v. Coates*, 949 F.2d 104, 105 (4th Cir.1991), the government agent working undercover drove across state lines, telephoned the defendant, and discussed the details of their criminal scheme. *See also United States v. Archer*, 486 F.2d 670 (2nd Cir.1973); *United States v. Brantley*, 777 F.2d 159 (4th Cir.1985), *cert. denied*, 479 U.S. 822, 107 S.Ct. 89, 90, 93 L.Ed.2d 42 (1986). The Tenth Circuit "has expressly limited the applicability of *Archer* to cases of virtual entrapment." *United States v. Esch*, 832 F.2d 531, 539 (10th Cir.1987) (citations omitted), *cert. denied*, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988). There is nothing in the indictment that suggests Agent Brandau provoked the defendants to undertake an interstate activity that they were not predisposed to undertake. *See Esch*, 832 F.2d at 539. Moreover, the indictment simply does not present an instance where the government agent, contemplating the need for an interstate nexus, patently contrives the means for obtaining federal jurisdiction. The face of the indictment supplies no basis for finding that the government manufactured federal jurisdiction.

IT IS THEREFORE ORDERED that the defendants' motions to join (Dks. 33 and 42) the co-defendant's motions are granted on the conditions stated above;

IT IS FURTHER ORDERED that the defendant Frazier's motion for discovery (Dk. 36) is denied for failure to comply with the court's guidelines;

IT IS FURTHER ORDERED that the defendant Frazier's motion to dismiss indictment for outrageous government conduct (Dk. 37) is denied;

IT IS FURTHER ORDERED that the defendant Holveck's motion to dismiss count two on ground of multiplicity (Dk. 39) is denied;

IT IS FURTHER ORDERED that the defendant Holveck's motion for 404(b) disclosure (Dk. 40) is denied as moot;

IT IS FURTHER ORDERED that the defendant Holveck's motion to compel discov-

---

7. The jurisdictional requirement to 18 U.S.C. § 1958(a) is stated in these terms:

> "Whoever travels in or **causes another** (including the intended victim) **to travel in interstate or foreign commerce,** or uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value shall be fined ... or imprisoned ... or both...."

(emphasis added). The interstate travel, mail or facility requirement is jurisdictional in nature, and the government normally need not prove that the defendant intended to use one of these interstate means. *See United States v. Winters*, 33 F.3d 720, 721 (6th Cir.1994); *United States v. Razo–Leora*, 961 F.2d 1140, 1148 (5th Cir.1992); *United States v. Edelman*, 873 F.2d 791, 794–95 (5th Cir.1989). "When the charge is not the substantive offense but is instead conspiracy, there still must be some federal jurisdictional nexus; the question is what facts, physical or mental, will suffice to supply that nexus." *United States v. Rosa*, 17 F.3d 1531, 1544 (2nd Cir.

1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994). If the substantive offense is actually committed in the manner proscribed by statute, then federal jurisdiction always exists for the conspiracy charge. *United States v. Feola*, 420 U.S. 671, 695, 95 S.Ct. 1255, 1269, 43 L.Ed.2d 541 (1975). When the conspiracy falls short of actually committing a jurisdictional act involved in the substantive offense, then it becomes a matter of whether the agreement itself contemplates the actions or concerns associated with federal jurisdiction. *Feola*, 420 U.S. at 695–96, 95 S.Ct. at 1269–70; *see, e.g., United States v. Rosa*, 17 F.3d at 1546 ("[E]ven where there are no stolen goods and no actual interstate or foreign transport of any goods, the jurisdictional nexus may be supplied simply, as in *Rose* [*United States v. Rose*, 590 F.2d 232 (7th Cir.1978)], by evidence that the defendants agreed to receive goods that they believed would be stolen and transported to them interstate."); *United States v. Sarro*, 742 F.2d 1286, 1296 (11th Cir.1984) ("Proof that goods actually traveled in interstate or foreign commerce is unnecessary when a defendant is charged with conspiracy to violate 18 U.S.C. § 2314.") These same principles support federal jurisdiction here if the government proves at trial the facts as alleged in the indictment.

ery concerning informant (Dk. 41) is denied for failure to comply with the court's guidelines;

IT IS FURTHER ORDERED that the defendant Holveck's motion to dismiss indictment for lack of federal jurisdiction (Dk. 43) is denied.