## COMMONWEALTH vs. ROBERT PONTES
### (and a companion case[1]).

Suffolk.  January 4, 1988. — May 9, 1988.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Rape. Practice, Criminal.* Severance, Argument by prosecutor.

At the trial of two codefendants charged with aggravated rape, there was no error in the judge's denial of one defendant's motion under the rule of *Bruton* v. *United States*, 391 U.S. 123 (1968), to sever his case, based on a contention that evidence of his codefendant's flight was an extrajudicial admission from which the jury would infer the defendant's guilt, where the judge's instructions to the jury that consideration of the evidence of flight be confined to the case against the codefendant were sufficient to protect the defendant from prejudice. [314-315]

In the circumstances of the trial of two defendants charged with aggravated rape, the prosecutor's repeated use in final argument of the word "degrading" was not an improper appeal to prejudice but rather a fair description of the crime and a fair characterization of the evidence. [316]

At the trial of two defendants for aggravated rape, the prosecutor's references to the victim as "this child" or "this girl who was adrift" in his closing argument were not improper, where it appeared that such characterizations were only an attempt, based on the evidence and the appearance of the victim, to bolster the victim's credibility so as to rebut the defense theory that she had fabricated the incident. [316-317]

A rhetorical question in the prosecutor's closing argument at a rape trial, which suggested the jurors place themselves in the victim's father's position, was not so flagrant, inflammatory, or unfair as to create reversible error, where the question appeared to be an attempt to suggest that the victim's father had acted reasonably upon learning his daughter had been raped. [317-318]

There was no error at a rape trial in the denial of a defendant's motion for a required finding of not guilty, where the evidence presented was sufficient to warrant the jury's finding that the defendant had raped the victim. [318-320]

[1] Against John R. MacLean.

INDICTMENTS found and returned in the Superior Court Department on July 5, 1985.

The cases were tried before *James P. McGuire*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael R. Schneider*, Committee for Public Counsel Services (*Christoper S. Skinner* with him) for John R. MacLean.

*John J. Connell* for Robert Pontes.

*Daniel Mullane*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. After a joint jury trial the defendants, Robert Pontes and John R. MacLean, were each convicted of two counts of aggravated rape. Defendant MacLean was also convicted of assault and battery, and this conviction was placed on file. MacLean was acquitted of kidnapping, and Pontes was acquitted of kidnapping and assault and battery. They appealed, and we took the case on our own motion. We now affirm the convictions.

The relevant facts are as follows. In the early morning hours of May 30, 1985, the victim was offered and accepted a ride from the defendant Pontes. Also in the vehicle were the defendant MacLean and one Joseph Hayes. The group then picked up defendant MacLean's brother, Thomas. The defendants stated that they were going to Hyde Park Avenue and that the victim could come along. Instead of going to Hyde Park Avenue, the defendants made several stops and after a while let Hayes out.

The victim asked if she could get out of the automobile. Defendant Pontes responded, "No. Don't you want to fool around," but using what the victim termed "stronger words." The victim then asked to be driven to "Jado's," a liquor store. Defendant Pontes stated that she could go to Jado's but he first had to go to the North End. The defendant Pontes then drove the automobile down a long alley in a waterfront area and stopped, whereupon the defendant MacLean, without a word, punched the victim in the face.

A struggle ensued between the victim and the defendants during which one of the defendants said, "Shut up, or we'll get

the knife." As the struggle continued, the defendant MacLean forced the victim to have vaginal and oral sex with him. The victim continued to scream as this occurred and was told that if she did not keep quiet, she would be thrown into the water in front of the car. Defendant Pontes then forced the victim to have vaginal and oral sex with him.

When Pontes indicated that he wanted to have sex again, defendant MacLean attempted to stop him and a fistfight erupted between the two. Defendant Pontes began swearing and the fight continued outside of the automobile. The victim and Thomas MacLean got out of the automobile and stood outside until the fight was over. Defendant Pontes then got back into his automobile, backed it up and in the process struck the victim with the vehicle's open front door.

Defendant MacLean then borrowed some money from his brother and left for work. Thomas MacLean helped the victim to a subway station. She boarded a train and then a bus to Roslindale, where she encountered her sister. The victim and her sister drove to the victim's parents' home, where the victim told her parents what had happened, and her mother called the police. The victim was then taken to Brigham and Women's Hospital. The victim's father and brothers went to Pontes's house, but were unable to confront him.

At Brigham and Women's Hospital the victim was treated and pictures were taken of her injuries. Acid phosphatase and Wood's Lamp tests revealed the presence of seminal fluid in the victim's vagina. Vaginal swabs tested positive for sperm; oral swabs did not.

After the victim had identified Pontes's automobile and the place where the incident occurred, the police arrested defendant MacLean at his home. Defendant Pontes was later located in the custody of the San Bernardino County (California) sheriff's department and subsequently was arrested.

Defendant MacLean claims that the judge below erroneously denied his motion to sever his trial from that of codefendant Pontes, and that the prosecutor committed certain improprieties in his closing argument. Defendant Pontes argues that the judge erred in denying his motion for a required finding of not guilty

on the charges of aggravated rape. We consider each of these claims in turn.

1. *The motion to sever.* Defendant MacLean claims that the trial judge erred in denying his motion to sever the trials under *Bruton* v. *United States*, 391 U.S. 123 (1968). According to *Bruton*, severance is constitutionally required where: a codefendant's extrajudicial statements are offered in evidence at a joint trial; the statements are "clearly inadmissible" as against the defendant; the codefendant is not subject to cross-examination because he does not testify; and, finally, there is a substantial possibility that, in determining the defendant's guilt, the jury relied on the codefendant's "powerfully incriminating extrajudicial statements" notwithstanding any limiting instructions from the judge. *Id.* at 128 & n.3, 135-136. See *Commonwealth* v. *Devlin*, 365 Mass. 149, 156 (1974); *Commonwealth* v. *LeBlanc*, 364 Mass. 1, 7-10 (1973).

By way of demonstrating consciousness of guilt on the part of defendant Pontes, the Commonwealth twice offered evidence of his flight after the incident. On both occasions, the judge instructed the jury that the testimony was admissible only against Pontes and not against defendant MacLean. Neither defendant testified. Defendant MacLean argues that, notwithstanding any limiting instructions, the jury would inevitably view defendant Pontes's flight as communicative conduct from which the guilt of both defendants could be inferred. We disagree.

Even assuming as correct the doubtful proposition that Pontes's act of fleeing may be deemed an extrajudicial admission of guilt within the meaning of *Bruton*,[2] evidence of Pontes's flight contains no direct inculpation of defendant Mac-

---

[2] The defendant cites Wigmore for the proposition that flight is an implied admission. 4 J. Wigmore, Evidence §§ 1052, 1060 (a) (Chadbourn rev. 1972). Wigmore explains, however, that the implied admission "does indeed rather involve circumstantial evidence." It is regarded as an admission usable against a party-opponent in order to avoid "substantial evasions of the hearsay rule." Hence, it seems doubtful that evidence of flight was the kind of "powerfully incriminating statement" sought to be excluded from a jury's hearing under *Bruton*. See *Commonwealth* v. *Clark*, 5 Mass. App. Ct. 673, 676-677 (1977).

Lean and only limited indirect implication of his guilt. In such a case, an appropriate instruction is enough to obviate *Bruton* concerns. *Commonwealth* v. *Keevan*, 400 Mass. 557, 570 (1987). The judge twice instructed the jury to confine consideration of the evidence of flight to the case against defendant Pontes. Therefore, no severance under *Bruton* was constitutionally required.[3]

2. *Prosecutor's closing argument.* Defendant MacLean claims that improprieties occurred in the prosecutor's closing argument on three separate occasions. On the first two occasions, contends MacLean, the prosecutor improperly inflamed the jurors' minds to sympathy for the victim by arguing, first, that the crime was "degrading" and, second, that the victim was a "child" or "this girl who was adrift and whom the defendants took advantage of." On the third occasion, the defendant claims, the prosecutor improperly suggested to the jury that they decide the case from the perspective of the victim's father. The defendant objected to the alleged improprieties and moved for mistrial, but did not request curative instructions. The judge did instruct the jury that the summations were only arguments, not evidence.

"The rules governing prosecutors' closing arguments are clear in principle. We have never criticized a prosecutor for arguing forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence." *Commonwealth* v. *Kozec*, 399 Mass. 514, 516 (1987), citing *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hen-

---

[3] The defendant also argues that, even if severance was not constitutionally required, the judge abused his discretion in denying the motion to sever. We discern no abuse of discretion. "Joinder expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice time and energy to serve upon juries, and avoids the necessity of recalling witnesses to successive trials." *Commonwealth* v. *Moran,* 387 Mass. 644, 658 (1982). It was within the discretion of the trial judge to conclude that any potential disadvantage to the defendant was outweighed by these public interests. *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 223-224 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972).

nessey, C.J., concurring). We review remarks alleged to be improper in the context of the entire argument, as well as in light of the evidence at trial and any instructions from the judge. *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432 (1984). Applying these principles to the argument at hand, we find no error.

In the circumstances of this case, the prosecutor's repeated use of the word "degrading" was not an improper appeal to prejudice, but rather a fair description of what actually happened. The jury had evidence before them that the victim was held in a vehicle against her will, was punched in the face, was threatened, had one pant leg ripped off and was forced to have oral and vaginal sex with defendant MacLean in the presence of defendant Pontes and Thomas MacLean. After defendant MacLean had finished with the victim, defendant Pontes forced her to have oral and vaginal sex, left the vehicle to urinate, and then came back and wanted to have sex again. The episode lasted over three hours. In the circumstances, a description of the crime as "degrading" was a fair characterization of the evidence. "The prosecutor can no more be prohibited from arguing relevant evidence that was heard by the jury than can the judge be prohibited from admitting it. The fact that as a result of hearing such evidence and such an argument by a prosecutor the jurors may have sympathy for the victim is understandable but unavoidable. Any other conclusion would only serve to shield an accused from prosecution in direct proportion to the amount and extent of the force or brutality with which the crime was committed." *Commonwealth* v. *Johnson*, 374 Mass. 453, 460 (1978).

As to the prosecutor's referring to the victim as "this child" or "this girl who was adrift," the characterization appears to have been an attempt by the prosecutor to meet defense challenges to the victim's credibility. The defense had argued that the victim fabricated the story of the rape in order to gain favorable attention from her father, who had ordered her out of the family home shortly before the rape. The prosecutor attempted to rebut this argument by characterizing the victim as a likely target for a rape rather than a young girl fabricating

stories to placate her father. [4] The characterization did not go beyond the evidence adduced at trial; it simply explained the victim's actions on the night of the rape from the perspective of the victim. "It is not improper to make a factually based argument that, due to the demeanor, disclosed circumstances, and appearance of a witness, a particular witness should be believed or disbelieved." *Commonwealth* v. *Kozec*, 399 Mass. 514, 521 (1987). We see nothing improper in the prosecutor's attempting to confront the defense's characterization of the facts with a plausible, albeit somewhat dramatically stated, characterization of his own. The prosecutor sought to use the appearance and demeanor of the victim, along with the testimony heard at trial, to bolster her credibility before the jury. There is nothing improper in that. *Commonwealth* v. *Kozec*, *supra*. *Commonwealth* v. *Stone*, 366 Mass. 506, 516 (1974).

Defendant MacLean also claims that the prosecutor impermissibly implored the jurors to place themselves in the position of the victim's father. We conclude that there was no reversible error.

Counsel for defendant MacLean had contended in closing argument that the victim's story was implausible and inconsistent. He suggested that the victim may have used the time lapse between the actual occurrence of the incident and the time the victim told her father about it to construct the rape story in order to win her father's sympathy. [5] The prosecutor responded

---

[4] The prosecutor referred to the victim as "adrift" on a number of occasions. Essentially, the relevant portion of the argument is as follows: "What they found themselves with was a girl who was in a very real way a victim; almost waiting to be a victim. Not through any fault of hers, but just drifting. Did they think they could get away with what they later did? Of course they did. They weren't running and hiding then. They had every reason to think they were going to get away with it. After all, look what happened. She doesn't go to the police. She doesn't even want to go to the hospital. She doesn't want to tell anybody. They do what they did, and she's just embarrassed. So they had picked the right victim. They really had . . . I'd suggest to you that there this poor little minnow who was adrift was taken to the North End and swallowed by the two sharks that she was with."

[5] The defendant argued as follows: "Is this the kind of proof, ladies and gentlemen — again, it's not her character. Her word is what's at issue, her

in his closing argument as follows: "They [the defendants] say to you, 'Behind all this is the father.' Well, that's not entirely wrong, for without Officer Reed and without the father — yes, without the father's action, without him getting angry . . . the police probably never would have been involved. Perhaps the case never would have become a case . . . But that doesn't mean that [the victim] was not raped." In the context above, the prosecutor asked the rhetorical question, "How would any father among you feel if your daughter came home and you found out from her sister, or from her that she had been raped?" Once placed in context, the prosecutor's argument appears as an attempt to suggest to the jury that the victim's father acted reasonably, or at least understandably, in going to Pontes's house. Read in the context of the whole argument, that statement was not so flagrant, inflammatory, or unfair as to cause reversible error.[6]

3. *The motion for required findings.* Defendant Pontes claims that the judge erroneously denied his motion for required findings of not guilty. "The essential question in evaluating the

---

truthfulness. With everything I've pointed out, the inconsistencies, the implausibility of the story that she tells and the motivation that she has, the time that she has. She tells her father this in the afternoon at five o'clock, around that time. She's got from eight o'clock in the morning, anyway, to five o'clock to figure out what she's going to do. She finally tells him then. Plenty of time to think about what she's going to do. Motive to fabricate? I suggest that you have it all before you. Her father had kicked her out. She wasn't happy with that situation. She's got some bruises to explain to her friend and why she wasn't with her friend earlier."

[6] Defendant MacLean also contends that the prosecutor erred when, in describing the victim's decision to accept a ride from the defendants, he stated that this was "[p]robaby not what you'd want your daughter to do under the circumstances." According to defendant MacLean, this remark improperly suggested to the jurors that they "approach their deliberations, not as impartial evaluators of the defendant's remarks and actions, but from . . . [the victim's parents'] point of view." *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 755 (1986). In *Sevieri*, the prosecutor on several occasions asked the female jurors to place themselves in the position of the victim. He also asked the jurors how they would be able to explain a not guilty verdict to their families when they went home after trial. Here, on the other hand, the prosecutor merely stated an obvious truth in retrospect. There was no appeal to sympathy; the remark was not improper.

denial of a required finding of not guilty is whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.' " *Commonwealth* v. *Clary*, 388 Mass. 583, 588 (1983), quoting *Commonwealth* v. *Vellucci*, 284 Mass. 443, 445 (1933). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). We must be satisfied that competent evidence was presented in support of each essential element of the crime. *Commonwealth* v. *Albano*, 373 Mass. 132, 134-135 (1977).

Defendant Pontes does not and could not seriously contend that the evidence was insufficient to warrant a finding that the victim was raped.[7] Rather, he claims that there was insufficient evidence to identify him as a perpetrator of the crime beyond a reasonable doubt. We note, however, that the victim testified that "I had sex with Robert, the same thing as [defendant] John MacLean." The victim had previously testified that defendant MacLean had forced her to have oral and vaginal sex. She also referred to the defendants in the plural, stating "[t]hey raped me" and "they were just telling me to shut up." This

---

[7] The victim testified that she was punched and then attacked by the defendants and was forced to have vaginal and oral intercourse with the two. There was a threat to "get the knife" or throw the victim into the water in front of the automobile. The victim's testimony was corroborated by the fresh complaint testimony of Officer Reed. There was also medical evidence to the effect that the victim had abrasions on her head and pain in her lower abdominal area and traces of seminal fluid in her vagina. The defendants were together in Pontes's automobile before they offered the victim a ride. They left the vehicle together when they knocked on the door of a house before the rape occurred. Defendant Pontes drove the vehicle to a long alley on the waterfront where defendant MacLean punched the victim in the face. Both defendants participated in removing or ripping the victim's clothing. Both participated in the rape. This evidence would permit the jury to conclude that the victim was subjected to nonconsensual sexual intercourse, with resulting serious bodily injury and as part of a joint enterprise. Therefore, the evidence was sufficient to sustain a conviction for aggravated rape on several grounds. See G. L. c. 265, § 22 (b) (1986 ed.).

evidence was sufficient to permit a rational jury to conclude that Pontes had raped the victim.[8]

*Judgments affirmed.*

---

[8] The victim's testimony was not without conflict. However, any "conflict in the evidence . . . is 'for the jury to sort out and is not material to the directed verdict issue.'" *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 19 (1980), quoting *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 261 (1980). Credibility determinations are for the jury, not the judge. See *Commonwealth* v. *Parker*, 389 Mass. 27, 31 (1983); *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 410-411 (1978).