# United States Court of Appeals
# For the First Circuit

No. 10-1235

REGINALD BUTLER,

Petitioner, Appellant,

v.

STEVEN O'BRIEN, Superintendent at MCI-OCCC,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Victoria L. Nadel for appellant.
Jennifer L. Sullivan, Assistant Attorney General, with
whom Martha Coakley, Attorney General, was on brief, for appellee.

December 9, 2011

**LYNCH**, **Chief Judge**.  The district court denied state prisoner Reginald Butler's petition for habeas corpus under 28 U.S.C. § 2254 in a well-reasoned opinion.  Butler v. O'Brien, No. 07cv11398, 2010 WL 607295 (D. Mass. Feb. 18, 2010).  Butler appeals; we affirm the denial of relief.

## I.

Butler was convicted in 2002 after a jury trial under the Massachusetts aggravated rape statute, Mass. Gen. Laws ch. 265 § 22(a).  The Massachusetts Appeals Court ("MAC") affirmed his conviction on appeal.  Commonwealth v. Butler, 809 N.E.2d 1100, 2004 WL 1301796 (Mass. App. Ct. June 11, 2004) (unpublished table decision).  He later filed motions for a reduced verdict or new trial, which were denied by the Superior Court.  On appeal, the MAC affirmed the rulings of the Superior Court in all respects, Commonwealth v. Butler, 862 N.E.2d 471, 2007 WL 764331 (Mass. App. Ct. Mar. 14, 2007) (unpublished table decision), and denied a petition for rehearing.  The Supreme Judicial Court ("SJC") denied direct appellate review in both instances.  Commonwealth v. Butler, 815 N.E.2d 1084 (Mass. 2004) (table); Commonwealth v. Butler, 871 N.E.2d 491 (Mass. 2007) (table).  We treat the MAC decisions as authoritative.  Kolender v. Lawson, 461 U.S. 352, 356 n.4 (1983).

Because it is pertinent, we give the MAC's account of Butler's conduct as well as of the resulting injuries to his victim:

-2-

The victim, a teenager who should have gone to school but decided to sleep in, woke around noontime [on February 8, 1999] to find the defendant sitting on her bed, his windbreaker hood pulled down to conceal his face. Over a twenty-minute period he raped the victim, holding a sharp silver object (a knife or a pair of scissors) to her neck and punching her repeatedly in the ribs. He then told her to lie face down so she would not see him, then left. The victim immediately called a friend to report what had happened, and before the day was out she went to Brockton Hospital, which followed standard post-rape protocol (rape kit, etc.). In telling friends, police, and hospital workers about the incident, the victim stated she did not know the assailant, primarily, she later said, because she feared retribution to her and her family. About five weeks after the rape, the victim admitted, first to a close friend and eventually to the police, that she had in fact recognized the assailant as a cousin of her neighbor. Eight days later she picked the defendant from a photo array, and DNA testing of the defendant compared to the vaginal swab (in the rape kit) confirmed the identification.

Butler, 2004 WL 1301796, at *1. Resulting from the rape, the victim suffered a "linear abrasion on [her] neck (to which the defendant held the knife), . . . . [d]iffuse tenderness to [her] left rib cage, and . . . [a] 3mm tear at [her] vaginal introitus," for which she received medical treatment. Id.

II.

On federal habeas review, Butler presented four claims, only one of which is the subject of this full opinion: that the state aggravated rape statute is void for vagueness as applied to

Butler because it does not define "resulting in serious bodily injury."[1]

Butler's claim, that the aggravated rape statute was void for vagueness for its failure to define "serious bodily injury," was presented late to the state Appeals Court and was not presented on his first direct appeal[2] or in the state trial court. While noting the procedural default, the Appeals Court nonetheless addressed the claim on its merits.[3]

Applying the deferential standard for federal habeas review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the federal district court held that the state court's

---

[1] Butler presented three other claims, including the claims that (2) the trial court's failure to instruct the jury on the meaning of "serious bodily injury" violated his right to due process and a fair trial; and (3) his trial and appellate counsel were constitutionally ineffective for failing to raise these and related arguments. The district court held that these two claims were procedurally defaulted and that the prerequisites for excusing default had not been met. Butler v. O'Brien, No. 07cv11398, 2010 WL 607295, at *8 (D. Mass. Feb. 18, 2010). We agree and rely on the district court's reasoning to affirm denial of the petition on those grounds. He raised a fourth claim but no Certificate of Appealability was issued as to that claim.

[2] On his direct state appeal, Butler challenged his status as a habitual offender for sentencing purposes, and made several evidentiary claims, including an argument that the evidence was insufficient to show beyond a reasonable doubt that his victim had suffered serious bodily injury. The state court rejected these claims, Commonwealth v. Butler, 809 N.E.2d 1100, 2004 WL 1301796 (Mass. App. Ct. June 11, 2004) (unpublished table decision), and he did not raise them in his federal habeas petition.

[3] While there might be a question as to whether this late presentation of the void for vagueness argument is procedurally defaulted, the state has not argued procedural default.

-4-

decision was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Under 28 U.S.C. § 2254(d)(1), a federal court may only grant a habeas claim where the state court's adjudication of that claim, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The district court held that Butler failed to meet this high burden of proof. We affirm.

III.

The state aggravated rape statute, Mass. Gen. Laws ch. 265, § 22(a), provides, in pertinent part:

> Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if either such sexual intercourse or unnatural sexual intercourse results in or is committed with acts resulting in serious bodily injury, . . . shall be punished by imprisonment in the state prison for life or for any term of years.

The aggravated rape statute does not provide a separate definition of serious bodily injury. The rape statute omits the requirement of serious bodily injury, and has a lower sentencing range of up to 20 years. Id. § 22(b). Butler was sentenced to life imprisonment, after a jury convicted him of aggravated rape.

Clarity is needed as to which issues are before us. The issue before us is not whether the evidence of serious bodily injury was sufficient to support the verdict. That has been

-5-

resolved against Butler and is not the subject of his appeal from denial of his habeas petition.

The issue for a federal court is also not whether the state court's rejection of his as-applied statutory void for vagueness argument is correct (and we do suggest it was incorrect). AEDPA limits federal court review to the issue of whether that decision was itself "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). This is a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), "which demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam), and that the defendant seeking habeas "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," Bobby v. Dixon, 132 S. Ct. 26, 27 (2011) (per curiam) (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

In order to answer this AEDPA question, it is also important to be clear as to exactly what Butler's constitutional argument is. He does not argue, nor could he, that he was not on fair notice that rape was a crime or that his conduct would subject him to criminal liability. It is self-evident that both rape and aggravated rape are crimes. His argument is also not that there

-6-

was uncertainty that he was within the class of persons within the scope of the statute. See, e.g., Lanzetta v. New Jersey, 306 U.S. 451 (1939).

Rather, his challenge is that the term "resulting in serious bodily injury" is so vague that he was not put on constitutionally adequate notice of the enhanced sentence he would receive for his conduct. This challenge falls into a special and limited category of void for vagueness arguments as to the uncertainty of the punishment imposed for knowingly criminal conduct. As the Supreme Court stated in United States v. Batchelder, 442 U.S. 114 (1979), "[s]o too, vague sentencing provisions may post constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." Id. at 123 (citing Giaccio v. Pennsylvania, 382 U.S. 399 (1966); United States v. Evans, 333 U.S. 483 (1948); United States v. Brown, 333 U.S. 18 (1948)); see also LaFave, Substantive Criminal Law § 2.3 (2d ed. 2003) ("Undue vagueness in the statute will result in it being held unconstitutional, [where] the uncertainty goes to . . . the punishment which may be imposed.").

The state court correctly paraphrased the basic constitutional standard for void for vagueness challenges set forth in clearly established Supreme Court law. Under the Constitution, "a criminal statute must give fair warning of the conduct that it makes a crime." Bouie v. City of Columbia, 378 U.S. 347, 350

-7-

(1964); see also Kolender, 461 U.S. at 361-62; Giaccio, 382 U.S. at 402-03; United States v. Buckalew, 859 F.2d 1052, 1054 (1st Cir. 1988) ("The question is whether, looking at the statute in 'light of the facts of the case at hand,' [it] 'provide[s] a constitutionally adequate warning to those whose activities are governed.'" (internal quotation marks and citations omitted)). Since Bouie, the standard has been restated as: A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages arbitrary and discriminatory enforcement. Hill v. Colorado, 530 U.S. 703, 732 (2000). There is no viable claim that the state court's decision was "contrary to" clearly established federal law.

Butler's argument to us is that in United States v. Lanier, 520 U.S. 259 (1997), the Supreme Court held for purposes of a federal defendant's claims of void for vagueness, that there are three "manifestations" of the fair warning requirement:

> First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Second, as a sort of "junior version of the vagueness doctrine," the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. Third, although clarity at the requisite level may be supplied by judicial gloss on an

-8-

> otherwise uncertain statute, due process bars
> courts from applying a novel construction of a
> criminal statute to conduct that neither the
> statute nor any prior judicial decision has
> fairly disclosed to be within its scope.

Id. at 266 (internal citations omitted). Butler argues the state court decision was unreasonable in its analysis with respect to all three manifestations.

We quickly dispatch the argument that the state court was required by clearly established Supreme Court case law to apply the rule of lenity or any other particular canon of statutory construction. Lanier says no such thing as to federal habeas review of state court decisions. Lanier characterizes the second manifestation as a rule of federal statutory construction. The rule of lenity "manifestation" is thus not applicable to our review of a state court criminal conviction, nor does Lanier purport to say this. Federal courts have no power to dictate to state courts rules of statutory construction or mandate adoption of the rule of lenity. Sabetti v. Dipaolo, 16 F.3d 16, 19 (1st Cir. 1994). In any event, no such rule is clearly established as to state court convictions. Finally, it would not be unreasonable to conclude that the rule of lenity on its own terms does not apply here. See United States v. Gerhard, 615 F.3d 7, 22 (1st Cir. 2010).

In addition, this case does not fall under Lanier's third prong. This is not a case like Bouie, in which the Court invalidates an unforeseeable judicial enlargement of the scope of a criminal statute. There are no retroactive lawmaking concerns

here, see Rose v. Locke, 423 U.S. 48, 53 (1975), and there is no issue of lulling a defendant into a false sense of security that on these facts his admitted rape of his victim must be found to be ordinary and not aggravated rape. Id. at 53.

This leaves us with Lanier's first manifestation that a statute is void for vagueness where it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." 520 U.S. at 266 (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926)).

This formulation is taken from the Court's prior vagueness jurisprudence, including its decision in Kolender v. Lawson, which Butler cites to us. In Kolender, the Court elaborated on the rule that a person of average intelligence must have constitutionally adequate notice that his conduct was forbidden by the statute. It held that there are two components to this rule: such notice must be clear to the offender and sufficiently clear to law enforcement officials so as to avoid arbitrary and discriminatory enforcement. 461 U.S. at 357-58; see also URI Student Senate v. Town of Narragansett, 631 F.3d 1, 13-14 (1st Cir. 2011).

Butler relies, in particular, on this second component of Kolender's analysis, in which the Court explained, "we have recognized recently that the more important aspect of vagueness doctrine is . . . the requirement that a legislature establish

-10-

minimal guidelines to govern law enforcement." 461 U.S. at 358 (quoting Smith v. Goguen, 415 U.S. 566, 574 (1974)) (internal quotation marks omitted). "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" Id. (alteration in original) (quoting Smith, 415 U.S. at 575).

We first note that Kolender's analysis arises in the First Amendment context, in which there are enhanced concerns about arbitrary enforcement under the void for vagueness doctrine where there is the "potential for arbitrarily suppressing First Amendment liberties," as was the case in Kolender. Id. (quoting Shuttlesworth v. City of Birmingham, 382 U.S. 87, 91 (1965)) (internal quotation mark omitted). A more stringent vagueness test is used when the rights of free speech or association are involved. Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2719 (2010). By contrast, "[v]agueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." United States v. Hussein, 351 F.3d 9, 14 (1st Cir. 2003) (quoting Maynard v. Cartwright, 486 U.S. 356, 361 (1988)) (internal quotation marks omitted). There are no First Amendment concerns at issue here and it is far from clearly established that Kolender's "more important aspect" of arbitrary enforcement applies where there are no First Amendment concerns.

Even when expressive rights are involved, the Supreme Court has been clear that "perfect clarity and precise guidance have never been required." United States v. Williams, 553 U.S. 285, 304 (2008) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)) (internal quotation mark omitted). The mere fact that close cases can be envisioned does not make a statute vague. Id. at 305-06.

The Supreme Court recently refined Kolender's analysis in Williams, itself a case that involved First Amendment concerns, when it stated, "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." 533 U.S. at 304.

Under this test,[4] the MAC's conclusion that the Massachusetts aggravated rape statute is not unconstitutionally vague is not unreasonable. The statute does not "authorize" or "encourage" seriously discriminatory enforcement. Where a statutory crime provides sufficiently clear standards for potential defendants, it "also establish[es] minimal guidelines to govern law

---

[4] It is not clear from Supreme Court precedent the extent to which, if any, the second prong's concern about arbitrary enforcement applies to a case such as this, in which no First Amendment concerns are present, and which involves sentence enhancements applied by a jury. Cf. United States v. Batchelder, 442 U.S. 114 (1979). We will assume arguendo that the test articulated by the Court in United States v. Williams, 553 U.S. 285, 304 (2008), applies.

-12-

enforcement." <u>Gonzales</u> v. <u>Carhart</u>, 550 U.S. 124, 150 (2007) (quoting <u>Smith</u>, 415 U.S. at 574) (internal quotation marks omitted).

The MAC provided several direct answers as to why the term serious bodily injury in the statute was not unconstitutionally vague as to Butler's case. First, the court held that persons of average intelligence could understand the term "serious bodily injury" as a matter of experience. In line with this, it held the use of the term "serious bodily injury" in the statute was not a technical concept.

Second, it referred to judicial interpretations of the statute in three Massachusetts SJC cases which apply the aggravated rape statute to comparable injuries, and so, independently give fair notice to Butler in addition to the notice given by the common usage of the term. We quote the MAC's comparison of the facts in these cases to the facts of this case:

> The linear abrasion on the [victim's] neck (to which the defendant held the knife), the "[d]iffuse tenderness to [the victim's] left rib cage," and the "3mm tear at her vaginal introitus" are similar in proportion to the injuries held sufficient in <u>Commonwealth</u> v. <u>Pontes</u>, 402 Mass. 311, 319 n.7 (1988) (abrasions to victim's head and lower abdominal pain), <u>Commonwealth</u> v. <u>Sumner</u>, 18 Mass. App. Ct. 349, 352 (1984) (bruises, scrapes on throat and back), and <u>Commonwealth</u> v. <u>Coleman</u>, 30 Mass. App. Ct. 229, 232-234 (1991) (swollen eye and face, facial bruises).

Butler, 2007 WL 764331, at *1 (alterations in original). Reference to judicial interpretations of a statutory term, of course, are common.

It was reasonable for the MAC to conclude the term "resulting in serious bodily injury" was not a technical term of art in the legal profession, which non-lawyers could not understand. Likewise, it was reasonable to conclude that a person of average intelligence had the ability to understand the term "resulting in serious bodily injury." A common dictionary definition of "serious" is "not light or superficial." Oxford English Dictionary (2d ed. 1989). The MAC decision was reasonable in concluding that there was adequate notice for a jury to find that the injuries this victim suffered fell within those parameters. Cf. Rose, 423 U.S. at 50.

In addition, the term "resulting in serious bodily injury" follows after predicates, none of which are challenged by Butler as vague. The assailant must have (1) engaged in sexual intercourse or unnatural sexual intercourse, (2) compelled the victim to submit by either force against the victim's will or by threat of bodily injury, and (3) the intercourse must either result in or be committed with acts which result in serious bodily injury. Mass. Gen. Laws ch. 265, § 22(a). The statute makes it clear that the injury must result from the activity described and that it must be serious.

A person of average intelligence would be on fair notice from the statutory language and common experience that it encompasses the injuries suffered by the victim in this case. The victim sought and received medical treatment for a linear abrasion to the neck, tenderness in the ribs where she had been punched several times, and vaginal tearing. Butler, 2004 WL 1301796, at *1.

Finally, the MAC was reasonable in rejecting the void for vagueness argument by referring to a decision from the state's highest court and two state appeals court decisions in which aggravated rape convictions were upheld. It is black letter law that a federal habeas court must look to the state's judicial decisions as to the application and interpretation of particular state statutes. See, e.g., Lanier, 520 U.S. at 266; Kolender, 461 U.S. at 356 & n.4; Rose, 423 U.S. at 53; Wainwright v. Stone, 414 U.S. 21, 22-23 (1973) (per curiam). It was reasonable for the MAC, for the reasons given in its opinion, to conclude that those state cases affirming convictions for aggravated rape against sufficiency of the evidence and other claims, provided constitutionally adequate notice and saved the statute from vagueness.

Butler responds with three arguments, none of which comes close to establishing that the MAC's conclusion was unreasonable. First, Butler contends the injuries in the cited cases were more serious than here. It was entirely reasonable for the MAC to consider the facts in those cases comparable with the injuries

-15-

suffered by the victim in this case for notice purposes. We agree with the district court that we "cannot say the injuries involved in [those cases] were so much more serious as to make it insufficiently clear that the aggravated rape statute applied." Butler, 2010 WL 607295, at *6.

Second, he argues that the cases are irrelevant because none of them involved void for vagueness challenges, and that the MAC decision was thus unreasonable. This argument misses the point. The issue is one of adequate notice, which is provided by these state court opinions which interpret whether the statute applies to the evidence presented in those cases.

The argument that the cases vary too much on the facts is also misplaced, both as a matter of substantive vagueness doctrine and as a matter of federal habeas law under AEDPA.[5] Lanier holds

---

[5]     Butler makes another argument that is both wrong and beside the point. He argues that the jury acquitted him of assault and battery which must mean it rejected the victim's version of how the rape came to be. This is not so. Under Massachusetts law, "factual inconsistencies in verdicts rendered on . . . multiple counts do not afford a ground for setting aside a conviction as long as the evidence is sufficient to support a conviction on the count on which the guilty verdict was reached." Commonwealth v. Pease, 731 N.E.2d 92, 95 (Mass. App. Ct. 2000); see also United States v. Lopez, 944 F.2d 33, 41 (1st Cir. 1991) ("[V]erdict inconsistency in itself is not a sufficient basis for vacating a conviction." (citing United States v. Powell, 469 U.S. 57 (1984); Dunn v. United States, 284 U.S. 390 (1932))). Butler has not presented clear and convincing evidence to rebut the presumption that the state court determined the facts correctly. Schriro v. Landrigan, 550 U.S. 465, 473-74 (quoting 28 U.S.C. § 2254(e)(1)) (AEDPA requires "federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence'"). Further, Butler's argument simply does not go to the vagueness of the

-16-

that even where there are notable factual differences between precedent and the case at bar, there is no violation "so long as the prior decisions gave reasonable warning that the conduct then at issue violated [the law]." Lanier, 520 U.S. at 269.

Third, Butler argues that these state cases should be ignored and reference made, instead, to various state criminal and administrative statutes which contain specific definitions of the term "serious bodily injury." The state courts have not interpreted the aggravated rape statute in light of those various definitions. On habeas review, we are required to look to the state court's interpretation. Wainwright, 414 U.S. at 22-23.

We disagree with the dissent's reasoning that the federal constitution requires a state, before it may impose an enhanced sentence for aggravated rape, to adopt similar definitions of serious bodily injury across the state code, regardless of the purpose of the statute, the nature of the offense, or whether a sentence enhancement is involved -- so as to avoid vagueness concerns. Massachusetts has chosen otherwise for its aggravated rape statute. It is also not uncommon for Congress to use the term "serious bodily injury" in federal criminal penalty enhancement provisions in the United States Code, but to leave that term undefined. See, e.g., 18 U.S.C. § 1368(a); 30 U.S.C. § 820(b)(2).

---

statute with respect to the victim's injuries.

-17-

Beyond that, the dissent ignores the strict standard on habeas review, which precludes a federal court from granting relief unless the defendant seeking habeas "show[s] that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Dixon, 132 S. Ct. at 27 (quoting Harrington, 131 S. Ct. at 786-87).

Finally, we add that the habeas claim also necessarily fails in light of numerous Supreme Court cases rejecting due process void for vagueness arguments against federal statutes. For example, the Supreme Court has held that the residual clause of the Armed Criminal Career Act's definition of "violent felony," which reads, "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added), is not unconstitutionally vague or "so indefinite as to prevent an ordinary person from understanding what conduct it prohibits," James v. United States, 550 U.S. 192, 210 n.6 (2007). We note that James involved a statute which enhanced sentences. The phrases "in a manner that reflects the belief", and "is intended to cause another to believe" in a child pornography statute, 18 U.S.C. § 2252A(a)(3)(B), are not void for vagueness, Williams, 553 U.S. at 304-07. Similarly, the terms "training" and "expert advice" in a criminal ban on material support to a criminal terrorist organization are not vague in part

-18-

because they are common terms which readily and naturally applied to plaintiff's conduct. Humanitarian Law Project, 130 S. Ct. at 2720.

For these reasons and because "it is not clear that the [state] [c]ourt erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision," Dixon, 132 S. Ct. at 27, we affirm the district court's denial of Butler's habeas petition.

So ordered.

**-- Dissenting Opinion Follows --**

**TORRUELLA**, **Circuit Judge** **(Dissenting)**. No characterization of a rape should trivialize the emotional and physical injuries to which the victim of such conduct is subjected. Much to my regret, however, I am forced to dissent because the statute in question violates basic imperatives of our constitutional system: (1) that criminal laws define the conduct which they proscribe with sufficient specificity to give notice of the prohibited conduct to those who may be subjected to their application, and (2) that they also delineate clearly-marked boundaries to prevent the arbitrary enforcement of the statute in question. See Kolender v. Lawson, 461 U.S. 352, 357-58 (1983). The Massachusetts aggravated rape statute fails on both grounds.

The Massachusetts rape statute provides for a maximum sentence of twenty years. See Mass. Gen. Laws ch. 265, § 22(b). In contrast, the Massachusetts aggravated rape statute incorporates several conditions, any of which, if met, exposes the offender to "imprisonment . . . for life or for any term of years."[6] Mass.

_____

[6] The statute expressly references two aggravating factors -- (1) commission of rape with acts that constitute or result in serious bodily injury and (2) commission of rape by a joint enterprise. The statute incorporates additional aggravating factors by reference to offenses defined in other chapters of the general laws of Massachusetts and elevates rape to aggravated rape if committed during the commission of those offenses. These aggravating offenses include: assault and battery with a dangerous weapon, assault with a dangerous weapon, robbery (armed or unarmed), kidnapping, burglary (armed or unarmed), breaking and entering at night, and carrying dangerous weapons.

Gen. Laws ch. 265, § 22(a). The petitioner in this habeas case was convicted of the latter offense and sentenced to life in prison.

Because the statute containing the aggravating factor charged in this case -- i.e., that the rape offense "results in or is committed with acts resulting in serious bodily injury," id. (emphasis added) -- does not define the crucial term "serious bodily injury," thus failing to provide notice of the proscribed conduct and a clear standard for the enforcement of this crime, I must conclude that the statute is impermissibly vague.

As an initial matter, I do not subscribe to the majority's reasoning that the Massachusetts Appeals Court ("MAC") was reasonable when it held that the term "serious bodily injury," as found in the Massachusetts aggravated rape statute, is a concept that the average person can understand as a matter of experience and apply in a criminal case in a uniform manner. The very fact that the Massachusetts legislature considered it appropriate to consistently define this same term elsewhere (including six times in the same chapter), cuts against this argument. However, it is principally the failure of this statute to satisfy the second condition of the applicable analysis -- i.e., that the statute "is so standardless that it authorizes or encourages seriously discriminatory enforcement," United States v. Williams, 553 U.S. 285, 304 (2008) -- that requires me to dissent.

"It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with

-21-

a view to their place in the overall statutory scheme.'"  Food &
Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133
(2000) (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809
(1989)).  Examining Massachusetts's aggravated rape law as it has
been applied to Butler with this canon in mind, it is plain to me
that the statute does, in fact, "authorize" and "encourage"
seriously discriminatory and standardless enforcement.

As I have stated, to be sure, any rape -- irrespective of
the magnitude of the physical, psychological, or emotional injuries
it may cause -- is an outrageous and deplorable violation of self,
warranting punishment.  But the gulf that separates the severity of
the injuries the victim suffered in the instant case from those
that amount to "serious bodily injury" under other Massachusetts
statutes is so wide as to emphasize the arbitrariness that the
statute could -- and, here, did -- allow.

Let me not speak in abstractions.  The victim here
suffered a "linear abrasion on the [] neck (to which the defendant
held the knife), [] diffuse tenderness to [her] left rib cage,
and [a] 3mm tear at her vaginal introitus . . . ." Commonwealth v.
Butler, 809 N.E.2d 1100, 2004 WL 1301796, at *1 (Mass. App. Ct.
June 11, 2004) (internal quotation marks omitted).  Coupled with
the unseen harm that accompanies a rape -- which, although
independently reprehensible in itself, is obviously not encompassed
within the term "serious bodily injury" -- these physical injuries
are not trivial.  However, the injuries suffered by the victim in

-22-

this case are, by comparison, a far cry from injuries that the Massachusetts legislature has elsewhere defined as constituting "serious bodily injury." For example, it defined that term in the same chapter of the Massachusetts General Laws as injury resulting in "permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death."[7] See Mass. Gen. Laws ch. 265, § 13A(c).

A further example can be found in the Massachusetts kidnapping statute, which defines the term "serious bodily injury"

---

[7] Contrary to the majority's erroneous characterization of my views as being that "the federal constitution requires a state, before it may impose an enhanced sentence for aggravated rape, to adopt similar definitions of serious bodily injury across the state code . . . .," Maj. Op. at 19, I suggest no such thing. Nor do I suggest that a state must adopt the above-quoted standard before it imposes an enhanced sentence for aggravated rape.

However, in searching for guidance in the absence of "minimal guidelines to govern law enforcement," Kolender, 461 U.S. at 358 (quoting Smith v. Goguen, 415 U.S. 566, 574 (1974)), I point to this language for the purpose of highlighting the gap between the injuries in this case and the least severe physical harm that could amount to "serious bodily injury," as that term is defined elsewhere in six other offenses found in the same chapter of the state code, and elsewhere in the Massachusetts General Laws.

Therein lies the problem: these other statutes define the key phrase "serious bodily injury," thereby restricting their enforcement within finite bounds and preventing haphazard and arbitrary application of the law. In my view, the Massachusetts legislature could very well define "serious bodily injury" as that term is specifically used in the aggravated rape statute to describe injury that is less severe than these other standards, presumably allaying my concerns in the process. What it cannot do, however, is fail to provide the most minimal of guidelines for one particular statute's enforcement and "permit 'a standardless sweep [that] allows [] prosecutors [] and juries to pursue their personal predilections.'" Kolender, 461 U.S. at 358 (quoting Smith, 415 U.S. at 575).

-23-

as physical injury "result[ing] in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ or substantial risk of death." Mass. Gen. Laws ch. 265, § 26. It shares this definition with statutes criminalizing assault and battery of an elderly or disabled person, see Mass. Gen. Laws ch. 265, § 13K, and wanton or reckless behavior creating a risk of serious bodily injury or sexual abuse to a child, see § 13L. Also in the same chapter, the Massachusetts assault and battery statute differs only slightly insofar as it does not qualify the "loss or impairment of a bodily function" by providing that it be "protracted." Mass. Gen. Laws ch. 265, § 13A(c); see also § 15A (criminalizing "assault and battery with a dangerous weapon"). Fu afield, the statute governing the offense of "causing serious bodily injury to participants in physical exercise training programs" defines "serious bodily injury" as harm that "creates a substantial risk of death or which involves either total disability or the loss or substantial impairment of some bodily function for a substantial period of time." Mass. Gen. Laws ch. 265, § 40.

Outside of chapter 265, the phrase "serious bodily injury" is defined expressly and repeatedly in different ways throughout the general laws of Massachusetts.[8] This fact alone

_____

[8] See, e.g., Mass. Gen. Laws ch. 90, § 24L (defining phrase as "bodily injury which creates a substantial risk of death or which involves either total disability or the loss or substantial impairment of some bodily function for a substantial period of time"); ch. 90B, § 8A (same); ch. 269, § 14 (defining phrase as "bodily injury which results in a permanent disfigurement,

-24-

belies the panel majority's conclusion that the Massachusetts aggravated rape statute "provides a person of ordinary intelligence fair notice" of what it prohibits or offers standards that prevent rther the statute from "authoriz[ing] or encourag[ing] seriously discriminatory enforcement." Williams, 553 U.S. at 304.

A survey of Massachusetts cases does little to calm my concern regarding the lack of guidelines to cabin the aggravated rape statute's scope, and underscores at least three issues that the panel majority overlooks. First, as the above suggests, aggravated rape convictions commonly involve injuries of greater severity than those at issue in the instant case. See, e.g., Commonwealth v. Robinson, 937 N.E.2d 522, 2010 WL 4676202, at *2 (Mass. App. Ct. Nov. 19, 2010) (unpublished table decision) (victim strangled, punched in mouth, and briefly lost consciousness); Commonwealth v. Dargon, 906 N.E.2d 1031, 2009 WL 1492264, at *1 (Mass. App. Ct. May 29, 2009) (unpublished table decision) (victim suffered bruises to head, face, and body; swollen right eye and bruised left eye; and four welts to back of head); Commonwealth v. McCourt, 781 N.E.2d 808, 812 (Mass. 2003) (victim suffered extensive harm including two-inch laceration on chin, bruising throughout chest and back, abrasions on knee and calf, and possible tear in vaginal wall). Second, as this case demonstrates, the aggravated rape statute has the problematic ability to shrink as

protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death").

-25-

necessary, at times bringing much less severe physical injury into its purview. See, e.g., Commonwealth v. Sumner, 465 N.E.2d 1213, 1215 (Mass. 1984) (upholding aggravated rape sentence where victim suffered bruises, scrapes, and seen in an "emotionally disturbed condition" after incident). Third, because a number of factors, any of which, if met, support a conviction under the aggravated rape statute, it is possible for prosecutors in Massachusetts to obtain convictions in the alternative -- e.g., by claiming aggravated rape due to "serious bodily injury" or because the defendant knowingly carried or possessed an unlawful firearm during the commission or attempted commission of the rape offense. See Mass. Gen. Laws ch. 265, § 22(a); ch. 269, § 10(a).

This last point is crucial. In holding that the MAC was reasonable when it rejected Butler's void for vagueness argument, the panel majority makes much of the fact that the state court "referr[ed] to a decision from the state's highest court and two state appeals court decisions in which aggravated rape convictions were upheld."[9] Maj. Op. at 15. But two of these cases involved circumstances in which the reviewing state courts had no reason to

---

[9] While the panel majority accurately observes that we are bound to look to state court interpretations of state statutes for guidance, the panel focuses too narrowly on what these cases do for the issue of actual notice, giving short shrift to the fact that we are equally bound to recognize that "the more important aspect of vagueness doctrine 'is not actual notice, but the . . . requirement that a legislature establish minimal guidelines to govern law enforcement.'" Kolender, 461 U.S. at 358 (quoting Smith, 415 U.S. at 574).

-26-

shed light on the meaning of "serious bodily injury" because appellants' convictions could have also been supported by evidence that the rape offense was committed as part of a joint enterprise, another aggravating factor under the aggravated rape statute. See Commonwealth v. Coleman, 567 N.E.2d 956, 959-60 (Mass. 1991); Commonwealth v. Pontes, 522 N.E.2d 931, 936 n.7 (Mass. 1988). The third case upon which the MAC relied, Commonwealth v. Sumner, 465 N.E.2d 1213 (Mass. 1984), not only contained another aggravating factor (kidnapping), but also involved a set of physical injuries that, as here, seem to fall short of the level of injury that other statutes calling for "serious bodily injury" require. See 465 N.E.2d at 1215.

It is clear that, by failing to define the term "serious bodily injury" the Massachusetts aggravated rape statute fails to afford guidance or limiting principles that would contain its enforcement. This standardless dictate "impermissibly delegates basic policy matters to . . . judges [] and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned v. City of Rockford, 408 U.S. 104, 108-109 (1972). This case is the result of this impermissible standardless delegation.

Regretfully, I am forced to dissent.